FILED

2011 Feb-11  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CAROLYN LUCAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CV-09-S-38-NE** |
| | ) | |
| **JOHN M. MCHUGH, Secretary** | ) | |
| **of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carolyn Lucas, filed this case on January 8, 2009.[1]  Her amended complaint, filed April 27, 2009, asserts claims against her former employer, John M. McHugh, the Secretary of the United States Department of the Army, for race-based discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981.[2]

The case currently is before the court on defendant's motion for summary judgment on all of plaintiff's claims.[3]  Upon consideration of the motion, the briefs,

---

[1] *See* doc. no. 1 (Complaint).

[2] *See* doc. no. 8 (Amended Complaint).  Plaintiff's original and amended complaints both named as a defendant Pete Geren, who was the Secretary of the Army on the date those complaints were filed.  *See* doc. no. 1 (Complaint); doc. no. 8 (Amended Complaint). Since then, however, John McHugh replaced Pete Geren as Secretary of the Army.  Therefore, McHugh is automatically substituted as a defendant in Geren's place.  *See* Fed. R. Civ. P. 25(d).

[3] Doc. no. 17.  The motion for summary judgment was filed on March 1, 2010.  Plaintiff's former counsel filed two different briefs in opposition to the motion, but both briefs were stricken for failure to comply with the requirements of the Uniform Initial Order.  *See* doc. no. 26 (order

and the evidentiary submissions, the court concludes that defendant's motion should be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v.*

---

striking brief filed by plaintiff on March 23, 2010); doc. no. 31 (order striking brief filed by plaintiff on April 1, 2010). Plaintiff's attorney subsequently withdrew from representation of plaintiff. *See* doc. no. 35 (order granting motion to withdraw). Plaintiff was given a period of time to retain new counsel, and she was advised that either she or a new attorney could file an amended response to defendant's motion for summary judgment. Plaintiff did not find a new attorney, however, so she filed her brief in opposition to defendant's motion for summary judgment *pro se*. *See* doc. no. 38 (plaintiff's brief).

[4] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II. SUMMARY OF FACTS

### A.    Plaintiff's Employment History with the Army

Plaintiff, Carolyn Lucas, an African-American female, began working for the United States Army Space and Missile Defense Command ("SMDC") in the Research, Development, and Acquisition Center located in Huntsville, Alabama,

during 1982.[5]   From 2001 until February of 2009, she held the position of "Procurement Analyst," which was classified as a GS-14, step 10 pay grade.  From February of 2009 until her retirement on October 3, 2009, she was a "Program Analyst," which also was at a GS-14, step 10 pay grade.[6]  From July of 2003 until October of 2008, plaintiff's immediate supervisor was Garfield Boon, an African-American male.  In October of 2008, Mr. Boon reassigned plaintiff to serve under the direct supervision of Ms. Barbara Scales.  In February of 2009, when plaintiff transferred to the position of Program Analyst, Ms. Paula Taylor became her supervisor.[7]

**B.    Plaintiff's EEO Activity Prior to 2007**

In 2005, plaintiff filed an EEO complaint challenging her non-selection for a GS-15 position as a "Supervisory Contract Specialist."  Ms. Lynn Washburn was the individual selected for that position, and the alleged discriminating selection officials were Mr. Boon and Mr. Michael Schexnayder, who was Deputy to the Commander

---

[5]*See* doc. no. 18 (defendant's evidentiary submission), at Exhibits 10 & 14 (plaintiff's resume).  *See also* defendant's evidentiary submission, Exhibit 1 (Deposition of Carolyn Lucas), at 8-10.

[6]Defendant's evidentiary submission, at Exhibits 10 & 14; Lucas Deposition, at 8-10. Plaintiff actually was placed in the GS-14, step 10 position as the result of an EEO complaint she filed in 2003.  Pursuant to the administrative decision on her complaint, plaintiff was placed in the GS-14, step 10 position, retroactive to April of 2001.  Lucas Deposition, at 10.

[7]Lucas Deposition, at 12-13.  The record does not clearly reflect the race of either Ms. Scales or Ms. Taylor.

4

of Research, Development, and Acquisition.  The Equal Employment Opportunity Commission ("EEOC") found no discrimination in connection with the 2005 selection decision.  Plaintiff also testified that she engaged in protected EEO activity between 2005 and 2007 by assisting and representing other claimants in pursuing their own EEO complaints.[8]

## C.   Plaintiff's Non-Selection for a GS-15 Supervisory Contract Specialist Position in January 2007

In September of 2006, the Army posted a vacancy for another GS-15 Supervisory Contract Specialist position (hereinafter, the "GS-15 position.").  After the vacancy closed, a Human Resources officer generated a list of qualified applicants for consideration by a selection panel.  The original list did not include plaintiff's name, but plaintiff was added before the list was sent to the selection panel.[9]  The original selection panel, which was convened to review the referred applicants' qualifications and assign each a numerical rank based upon criteria specified in a selection matrix, consisted of Lynn Washburn (the panel chair), Connie Faulkner, and Colonel Dwight Thomas.[10]  Before the panel actually considered the applicants,

---

[8]Lucas Deposition, at 14-18.  The court presumes plaintiff was assisting other complainants in her role as a union representative.

[9]Defendant's evidentiary submission, Exhibit 7 (administrative testimony of Katina Gladney), at 195, 198, 204, 207-08.

[10]Lucas Deposition, at 27-28; defendant's evidentiary submission, Exhibit 2 (administrative testimony of Garfield Boon), at 109, 155.

however, its composition changed. Ms. Washburn transferred to another division and, consequently, relinquished her role as panel chair, although she did remain a member of the panel; Colonel Thomas retired; and Ms. Faulkner recused herself from the panel. Thereafter, Mr. Boon became the panel lead, and Shirley Hornaday and Debra Wymer were appointed as replacement panel members.[11]

The panel members ranked the applicants in each of the following categories: (1) contracting experience (which included four sub-categories, or "tasks"); (2) supervisory experience (which included nine "tasks"); (3) training; (4) education; and (5) awards. Plaintiff's combined score in all these categories ranked ninth out of the thirty-six individuals listed on the matrix.[12] During the rating process, the panel members did not meet with each other to discuss the various applicants' scores, because Boon instructed them not to do so. Boon believed that having each panel member make independent ratings would help prevent any of the applicants from concluding that the panel had colluded against them. Only the top five applicants were selected for an interview by the panel. The panel rated each of these five applicants' interviews, added the interview scores to the applicants' scores in other categories, and sent a list of the applicants and their scores to the selecting officials,

---

[11]Lucas Deposition, at 27; Boon administrative testimony, at 155-58.

[12]*See* defendant's evidentiary submission, at Exhibit 8 (matrix).

Mr. Schexnayder and Paul Bogosian, the Executive Officer for Army Program Executive Office–Aviation.[13]

On January 31, 2007, the selecting officials selected Ms. Darryl Nottingham for the GS-15 position.[14]  Ms. Nottingham had more years of supervisory experience than plaintiff, but plaintiff had more years of overall experience in the contracting field, and also more "leadership" experience.[15]    In a written memorandum announcing Ms. Nottingham's selection, Paul Gogosian stated that he chose her "as recommended by the evaluation panel," because the panel

> determined the best qualified candidates against the following abilities pertaining to the position:
>
> a.    Demonstrated experience in providing supervisory and leadership direction to a division or directorate level contracting organization.  Includes, [sic] fostering EEO concepts throughout the organization, embracing cultural, and gender diversity.
>
> b.   Demonstrated experience in incorporating cultural diversity

---

[13]Lucas Deposition, at 21, 27-28; Boon administrative testimony, at 108-10.

[14]Lucas Deposition, at 32-33; defendant's evidentiary submission, Exhibit 9 (memorandum from Paul Bogosian regarding selection of Darryl Nottingham).  The court presumes Ms. Nottingham is not African-American, but the parties do not point to any portion of the record that clearly identifies Ms. Nottingham's race, and the court did not independently locate any such information in the record.

Another individual was selected from the same group of applicants for a GS-15 position in Colorado Springs, Colorado.  It is unclear whether plaintiff intends to asset a claim for her non-selection for the Colorado Springs position.  Because she did not make any *substantive* argument on the subject, the court concludes that she did not intend to assert such a claim.

[15]Lucas Deposition, at 57-59. *See also* defendant's evidentiary submission, at Exhibit 10 (resume of Carolyn Lucas) & Exhibit 11 (resume of Darryl Nottingham).

and promoting team spirit, pride, trust and group identity in an organization, group, or team.

c.  Demonstrated experience in management of organizational resources (i.e., human, financial/budgetary and office protocol, processes and procedures).

d.  Demonstrated experience in management of employee development, to include providing acquisition experiences, training, assignments, recognitions, and achievements.

e.  Demonstrated capability in problem resolution (may include policy, cost, schedule, logistics, acquisition reform, or employee performance).

f. Demonstrated capability to provide expertise in managing work processes, operational planning, utilizing e-technology, and establishing/assessing metrics.

g. Demonstrated experience in providing expert knowledge in the management of human resources in the areas of establishing goals, objectives, and/or standards, incentivizing and awarding performance, managing organizational culture and change, establishing good management-employee relations, managing poor performance, issuing discipline and handling/resolving complaints and grievances.

h.  Exhibit expert knowledge in management control processes. Includes establishing, conducting and maintaining effective management controls such as reports, reviews, procedures, functions, standards of conduct, assessing areas of risk, identifying and correcting weaknesses.

i. Demonstrated experience in leading and directing a division or directorate level contracting organization, including boards, teams, groups, panels or forums.

j.  Demonstrated experience/expert knowledge of automated procurement systems.

8

k.  Demonstrated expertise in providing expert knowledge in the acquisition of weapon systems, major items, parts or services in support of warfighters, PMs or military service components.

l.  Demonstrated experience/ expert knowledge in fostering good relationships, partnering, influencing, negotiating, interpersonal skills, decisiveness and customer service with government DoD and Industry officials/ partners.

m.  Extensive demonstrated contracting experience, including preparing for and participating in competitive acquisitions (solicitation development, contract negotiations, and development of cost-price objectives); experience in post-award activities/ contract administration working with multiple contract types (FFP, FPI, CPFF, CPAF, CPAT, as well as both term contracts and completion contracts).[16]

## D.  Plaintiff's Non-Selection for a GS-14 Supervisory Business Management Officer Position in July 2007

On an undisclosed date, the Army posted a vacancy for a GS-14 "Supervisory Business Management Officer" position (hereinafter, "the GS-14 position").  The vacancy closed in early February of 2007; and, on February 22, 2007, a Human Resources representative forwarded a referral list of ten applicants, including plaintiff, for consideration by a review panel.[17]  The original selection panel, which was convened to review the referred applicants' qualifications and assign each a numerical rank based upon criteria specified in a selection matrix, consisted of Beth

---

[16]Defendant's evidentiary submission, Exhibit 9, at 1-3.

[17]Defendant's evidentiary submission, Exhibit 5 (administrative testimony of Betty Kerlin), at 91-102.

Whitaker, Garfield Boon, and Christine Ryan.[18]  That panel evaluated the applicants based on each of the following categories: (1) supervisory (including six sub-categories, or "tasks"); (2) technical (including three sub-categories, or "tasks"); (3) training; (4) education; (5) awards; and (6) interview.[19]  The panel chose Christina Rodriguez, a Hispanic female who received the top score during the rating process, for the position.[20]

On March 31, 2007, plaintiff sent a letter to Lieutenant General Kevin T. Campbell, the Commanding General of SMDC, challenging the panel's decision. Plaintiff requested Lieutenant General Campbell to delay the selection decision for the GS-14 position, require a new panel to be formed, and require EEO and union representatives to be present at any interviews conducted by the new panel.[21] Lieutenant General Campbell acquiesced to plaintiff's request, and on April 11, 2007, he sent a memorandum to Mr. Schexnayder, requesting him to appoint a new panel, consisting of at least five members, all of whom could act independently of the

---

[18]Boon administrative testimony, at 14, 20-22, 37; Lucas Deposition, at 85.

[19]*See* defendant's evidentiary submission, at Exhibit 14 (selection matrix for the GS-14 position).

[20]Boon administrative testimony, at 37.

[21]Defendant's evidentiary submission, at Exhibit 17 (March 31, 2007 letter from plaintiff to Lieutenant General Campbell).

former panel.[22]

Despite Campbell's directive that the second panel be comprised of at least five members, the second panel inexplicably was formed of only three members: Patricia Shifflett, the panel lead; Erbin Troutman; and Beverly Fuller.[23]   Each of those individuals scored the referred applicants on the selection matrix and forwarded their respective scores to Shifflett, who tallied the scores.[24]   The panel then interviewed four of the top five applicants, including plaintiff.[25]   After the interview, Christina Rodriguez was the top-scoring candidate, with 190 points, and plaintiff was second, with 188 points.[26]   When an EEO counselor asked the panel members to reconstruct their scores, Shifflett concluded she should have awarded plaintiff one extra point, for her educational background, and Fuller concluded she should have awarded Rodriguez one *less* point.[27]   Therefore, taking into account the corrections identified by Shifflett and Fuler, plaintiff and Rodriguez tied for first place with a score of 189.

---

[22]Defendant's evidentiary submission, at Exhibit 18 (April 11, 2007 memorandum from Lieutenant General Campbell to Mr. Schexnayder).

[23]Lucas Deposition, at 88.

[24]Defendant's evidentiary submission, Exhibit 4 (administrative testimony of Erbin Troutman), at 77-78.

[25]Defendant's evidentiary submission, Exhibit 3 (administrative testimony of Patricia Shifflett), at 58, 68, 75-66; Troutman administrative testimony, at 75-76.  The other of the top five applicants declined to participate in the interview.  Shifflett administrative testimony, at 58.

[26]Defendant's evidentiary submission, at Exhibit 13 (scoring matrix for GS-14 position).

[27]Shifflett administrative testimony, at 66-67.

The panel forwarded all of the applicants' scores to Mr. Boon, who served as the selecting official for the GS-14 position.  Boon selected Ms. Rodriguez for the position, based upon the fact that she was the highest scoring applicant.  Boon then forwarded his selection decision to a group of subject matter experts, who reviewed the decision-making process and all supporting documentation to determine whether the process was conducted in accordance with the rules and regulations of the agency.[28]  The record does not reflect what decision was reached by the subject matter experts, but it is clear that the decision to select Ms. Rodriguez for the position was approved by Mr. Schexnayder, the approving official, because Ms. Rodriguez ultimately was awarded the position.

Mr. Troutman testified during the administrative hearing that plaintiff was an excellent candidate who interviewed well and rated highly in every area, but that he nonetheless gave plaintiff a slightly lower overall score than Rodriguez because plaintiff did not have as much experience in Human Resources as Rodriguez did.  Although he considered it a close call, Troutman determined Rodriguez was the best candidate for the position because of her Human Resources experience.[29]  Ms. Shifflett testified during the administrative hearing that she recommended Rodriguez

---

[28]Boon administrative testimony, at 15-17.

[29]Troutman administrative testimony, at 79-86.

over plaintiff because Rodriguez was currently working in a similar position, and because she had a better attitude toward the position.  According to Shifflett, Rodriguez had a "can-do" attitude and was willing to do any work that was required of her at any level, while plaintiff had more of a visionary attitude and wanted to make changes within the organization.  Furthermore, Shifflett thought that plaintiff presented herself during the interview as being overqualified for the position. Shifflett testified that, even considering tied scores for plaintiff and Rodriguez, she still would have chosen Rodriguez for the position, for the reasons stated above.[30] The record does not contain any evidence of Ms. Fuller's thoughts on the selection process, because Ms. Fuller passed away after the interviews were conducted.

Additionally, Boon testified that the duties GS-14 position focused heavily on business-related functions.  Boon believed that Ms. Rodriguez, who previously served as a Business Assessment Advisor, would have had more past opportunities to perform business-related functions than plaintiff, who previously served as a Procurement Analyst.[31]

### III. DISCUSSION

A.    **Plaintiff's Claims Under 42 U.S.C. § 1981**

---

[30]Shifflett administrative testimony, at 59-60, 67-68.

[31]Boon administrative testimony, at 23-25.

Defendant argues that plaintiff's claims under 42 U.S.C. § 1981 should be dismissed for lack of subject matter jurisdiction because the Army, as an agency of the United States, has not waived sovereign immunity for claims pursuant to that statute. *See, e.g., U.S. v. Timmons,* 672 F.2d 1373, 1380 (11th Cir. 1982) ("It is well established in this circuit that the United States has not waived its immunity to suit under the provisions of the civil rights statutes," including 42 U.S.C. § 1981.) (citations omitted). Plaintiff consents to the dismissal of her claim under 42 U.S.C. § 1981,[32] and the court finds defendant's arguments about sovereign immunity to be correct and in accordance with law.[33] Accordingly, all of plaintiff's claims under 42

---

[32]*See* doc. no. 38 (plaintiff's brief), at 18 ("Plaintiff agrees that her 42 U.S.C. Section 1981 Claims should be stricken.").

[33]"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). All waivers of the nation's sovereign immunity must be "unequivocally expressed," and all expressed waivers will be strictly construed. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1994); *see also id.* at 34 (recognizing the "traditional principle that the Government's consent to be sued 'must be construed strictly in favor of the sovereign,' . . . and not 'enlarge[d] . . . beyond what the language requires'") (citations omitted) (bracketed alterations in original); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) ("In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver '"beyond what the language requires."'") (citations omitted). When it applies, sovereign immunity is "a complete bar to lawsuits" against the United States. *State of Fla., Dept. of Business Regulation v. U.S. Dept. of Interior*, 768 F.2d 1248, 1251 (11th Cir. 1985).

The protection of sovereign immunity generally extends to claims against the United States, agencies of the United States government, and employees of those agencies sued in their official capacities. *See, e.g., Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968) ("The immunity of the sovereign, however, extends to its agencies . . . and to the officers of these agencies."); *Kozera v. Spirito*, 723 F.2d 1003, 1008-09 (1st Cir. 1983) ("A federal officer sued for damages in her official capacity is immune from suit absent an express consent to suit or waiver of immunity.") (citation omitted).

U.S.C. § 1981 are due to be dismissed with prejudice.

**B.      Plaintiff's Claims Under Title VII**

Plaintiff also argued that her non-selection for the GS-15 and GS-14 positions was the result of race-based discrimination and retaliation for engaging in prior EEO activity.   Plaintiff does not claim to have direct evidence of defendant's alleged discrimination and retaliation.   Thus, she must prove her claims with circumstantial evidence, navigating the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981).   Under this analysis, a plaintiff must first establish a *prima facie* case of disparate treatment, which creates a presumption of discrimination.   To rebut the presumption, the employer then must articulate a legitimate, nondiscriminatory reason for the disputed employment action.   If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to show that defendant's proffered reason is merely a pretext for unlawful discrimination.   *See McDonnell Douglas,* 411 U.S. at 802-05; *Burdine,* 450 U.S. at 252-56.

Defendant does not argue that plaintiff cannot establish a *prima facie* case of race-based discrimination or retaliation with regard to her non-selection for the GS-14 and GS-15 positions.   Instead, defendant asserts only that plaintiff cannot establish

that the Army's proffered legitimate reasons for both employment decisions were actually a mere pretext for race-based discrimination and retaliation.[34]  Upon review of all the evidence, the court agrees with defendant.

Defendant asserts that Ms. Nottingham and Ms. Rodriguez were chosen for the GS-15 and GS-14 positions, respectively, because those women were the best candidates for the positions.  That is a legitimate, non-discriminatory, and non-retaliatory reason for the selection decisions.  Accordingly, the burden shifts to plaintiff to "come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely a pretext for intentional discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804)); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) ("If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with that reason is not sufficient.") (internal citation omitted).  The plaintiff shoulders this burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[34]In his initial summary judgment brief, defendant also argued that summary judgment should be granted on certain of plaintiff's claims due to her failure to exhaust all available administrative remedies.  *See* doc. no. 18 (defendant's brief), at 19-20.  However, in his reply brief, defendant withdrew that argument.  *See* doc. no. 39 (defendant's reply brief), at 4.

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1528 ( citation omitted); *see also Silvera v. Orange County School Board*, 244 F.3d 1253, 1258 (11th Cir. 2001).

Moreover, in a case (like this one) where the plaintiff alleges that she was more qualified than the selected applicant, the plaintiff cannot show pretext "by simply arguing or even by showing that [she] was better qualified than the [individual] who received the position [she] coveted." *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000). Instead, the plaintiff must "show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. County Commission of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), and also citing *Ash v. Tyson Foods*, 546 U.S. 454, 454 (2006)).[35]

---

[35]In *Ash v. Tyson Foods*, 546 U.S. 454 (2006), the Supreme Court disapproved of the standard previously employed by the Eleventh Circuit: *i.e.*, that "[p]retext can be established through comparing qualifications only when 'the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.'" *Id.* at 454 (internal citations omitted). Even so, the Supreme Court did approve of a standard employed elsewhere by the Eleventh Circuit: *i.e.*, "that 'disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* at 1197 (citing *Cooper*, 390 F.3d at 732).

### 1.    GS-15 Position

Plaintiff argues that the following assertions establish that defendant's proffered legitimate reasons for her non-selection for the GS-15 position were pretextual:  (a) Boon's decision to deny the selection panel the opportunity to meet for discussion prior to the interviews; (b) Boon's intentional miscalculation of plaintiff's score ; (c) Ms. Washburn's intentional "downgrading" of plaintiff's score; and (d) plaintiff's superior qualifications.

### a.    Boon's decision to deny the selection panel the opportunity to meet prior to interviews

Boon acknowledged that he decided the selection panel should not meet to discuss the individual panel members' ratings before they submitted the ratings to him to determine the top five candidates for interview.  Plaintiff asserts in her brief that this decision "was intentionally devised to prevent the Plaintiff's selection for the GS-15 position."[36]  However, plaintiff offers no evidence to support that assertion, and no further explanation as to how Boon's decision prevented her from being selected.  To the contrary, Boon testified that he made the decision in order to avoid the appearance that the panel members were conspiring against any particular applicant.  Absent any other evidence to refute that assertion, the court concludes that

---

[36]Plaintiff's brief, at 19.

18

it is logical and sound.  It is more likely that panel members would rate the various applicants based solely on job-related qualifications, if they conducted their respective evaluations independently of one another, than if they met together to discuss specific applicants.

### b.    Boon's intentional miscalculation of plaintiff's ratings

Plaintiff asserts that Boon "intentionally miscalculated the Plaintiff's score . . . and intentionally flawed the process to reduce the Plaintiff's score.  This prevented the Plaintiff from emerging on the top 5 list of candidates for an interview for the position."[37]  Boon acknowledged that, when he was preparing for the EEO hearing on plaintiff's claim, he realized that he had made an error in transferring plaintiff's score.  The result was that plaintiff's total score should have been one or two points higher than it actually was, but even taking into account a two-point increase, plaintiff still did not score in the top five applicants.[38]  Plaintiff asserts that "[t]he actual miscalculations *when weighted* were far more than one or two points and prevented the Plaintiff from being listed on the list of top candidates,"[39] but none of the evidence she cites actually supports this assertion.

### c.    Ms. Washburn's intentional "downgrading" of plaintiff's

---

[37]*Id.*

[38]Boon administrative testimony, at 158.

[39]Plaintiff's brief, at 20.

**score**

Plaintiff asserts that "Ms. Washburn intentionally down rated the Plaintiff's scoring based on her failure to correctly apply the pre approved discrete, objective selection criteria."[40] Ms. Washburn's scores for plaintiff may have been lower than the other panel members' scores, but there is no evidence that Ms. Washburn intentionally gave plaintiff a lower score in order to deprive her of the job opportunity, or that Washburn was motivated by race discrimination or retaliation.

### d.    Plaintiff's allegedly superior qualifications

Finally, plaintiff argues that the panel's selection of Nottingham was discriminatory and/or retaliatory because she was more qualified for the position than Nottingham was.  Specifically, plaintiff points out that she had more leadership training and experience than Nottingham, that she had a Master's Degree and Nottingham did not, and that she held more Level 3 certifications than Nottingham did.  Those statements are true,[41] but they do not support a conclusion that plaintiff is so much more qualified than Nottingham that no reasonable person, in the exercise of impartial judgment, could have chosen Nottingham over plaintiff for the GS-15 position.  Nottingham undisputedly had more supervisory experience than plaintiff,

---

[40]*Id.* at 21.

[41]*See* defendant's evidentiary submission, at Exhibit 10 (plaintiff's resume) & Exhibit 11 (Nottingham's resume).

and the panel gave significant weight to that experience.  The panel was entitled to assign more weight to the applicants' supervisory experience than to other factors, and it is not for this court to second-guess the panel's decision in that regard.  *See Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1269 (11th Cir. 2001) ("We will not second guess Goldkist's decision to emphasize qualifications over length of service.") (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*) ("[F]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (in turn quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991))).[42]

In summary, plaintiff has failed to establish that defendant's proffered legitimate reasons for not selecting her for the GS-15 position were actually mere pretext for race discrimination and retaliation.

## 2.    GS-14 position

Plaintiff argues that the following establish that defendant's proffered

---

[42]The *Cofield* decision quoted the "slap you in the face" standard for comparing qualifications that was rejected by the Supreme Court in *Ash. See Cofield,* 267 F.3d at 1268 ("Cofield must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'") (citations omitted).  This court concludes that it nonetheless is appropriate to follow *Cofield,* because the standard actually employed by the Eleventh Circuit was akin to the modified standard set forth in Brooks.  *See id.* ("The relevant inquiry for us, then, is not to judge which employee was more qualified, but to determine whether any disparity between Bowen's and Cofield's managerial qualifications is so great that a reasonable fact-finder could infer that Goldkist did not believe Bowen to be better qualified.").

legitimate reasons for her non-selection for the GS-14 position were a mere pretext for race discrimination and retaliation: (a) the bias of the first selection panel; (b) Boon's bias against her and lack of credibility; (c) Ms. Fuller's inclusion on the second selection panel; (d) the second panel members' knowledge of her prior EEO activity; (e) intentional miscalculations of plaintiff's scores by the second panel's members; and (f) plaintiff's superior qualifications.

### a.  Bias of the first selection panel

Plaintiff asserts that the first selection panel was biased and improperly constituted.  That assertion is insufficient to establish pretext, however, because it is undisputed that the first panel's ratings were not actually considered by the selecting official for the GS-14 position.  Plaintiff complained about the first panel's ratings, and a new panel was formed to begin the rating process anew.  Therefore, even if the first panel was biased, the bias would have had no actual effect on the utlimate selection decision.

### b.  Boon's bias and lack of credibility

Plaintiff also alleges that Boon was biased against her, and that his testimony is not fully credible.  Boon and Schexnayder decided that Boon should not be a member of the second panel, because the process might appear more "fair" and

"transparent" if he were not involved in the initial evaluation.[43]  Plaintiff characterizes that decision as "evidence that Boon and Schexnayder both knew that Boon's participation would bring a discriminatory bias into the process."[44]  The court cannot agree.  Boon and Schexnayder may have acknowledged that plaintiff would *perceive* less of a discriminatory bias if Boon did not participate on the panel, but there is no evidence that Boon actually acknowledged his own bias.

Also, Boon has testified that he perceives some sort of "racial animosity" between him and plaintiff, even though both of them are African-American.[45]  Plaintiff construes this comment to mean that Boon demonstrated racial animosity *toward her*.  Considering Boon's testimony in context, however, it is apparent that Boon believed that *plaintiff* demonstrated racial animosity toward *him,* or at least that plaintiff regularly complained of race discrimination when decisions were not made in her favor.

Plaintiff states that it

also is evident that Boon had a retaliatory animus against [her] because

---

[43]Boon administrative testimony, at 39.

[44]Plaintiff's brief, at 25.

[45]*See* doc. no. 25 (plaintiff's prior evidentiary submission), Exhibit 10 (administrative testimony by Mr. Boon during a 2006 EEOC administrative hearing), at 657.  Defendant asserts that none of plaintiff's prior evidentiary submissions should be considered, because the previous briefs filed by plaintiff's attorney were stricken from the record.  Giving plaintiff every benefit of the doubt, however, only plaintiff's prior *briefs* were stricken, not her evidentiary submission.  *See* doc. nos. 26 and 31 (orders striking briefs).

at the time of her retirement he consented to her nomination for a Meritorious Civilian Service Award, along with numerous other awards and commendations for her 38 years of dedicated service to the US Army.  Not once was it mentioned that the Plaintiff exhibited racial anonymosity [sic], nor was she cited for being a grumbling and complaining employee . . . .[46]

The cited portions of the record simply do not support plaintiff's argument.  Neither does plain logic.  In the absence of any evidence to the contrary, Boon's nomination of plaintiff for service award awards indicates *favorable* treatment, not unfavorable or discriminatory treatment.

Finally, plaintiff offers several reasons why Boon's testimony should not be considered credible, including Boon's past misstatements and past mishandling of paperwork.[47]  Most of the examples plaintiff provides are unrelated to the employment decisions at issue in this case, and even if they are related, they do not demonstrate any discriminatory or retaliatory intent, and they do not discredit any of defendant's proffered legitimate, non-discriminatory reasons for the employment decisions at issue.

### c.    Ms. Fuller's inclusion on the second panel

Plaintiff states, in conclusory fashion, that Ms. Fuller should not have been included on the second panel because she had been involved in a prior EEOC case

---

[46]Plaintiff's brief, at 27.

[47]*See id.* at 27-30.

24

that was decided in plaintiff's favor against the PEO Tactical Missiles, ATACMS/BAT Project Office.  However, plaintiff offers no evidence to support her assertions, and no explanation of Ms. Fuller's role in the previous case.[48]  Her conclusory allegations about Ms. Fuller's bias are insufficient to establish pretext, especially in the absence of any evidence that Ms. Fuller engaged in any discriminatory or retaliatory conduct in connection with the GS-14 decision.

### d.  Second panel members' knowledge of her prior EEO activity

Plaintiff also argues that "[a]ll of the second panel members had prior knowledge of the Plaintiff's involvement in EEO protected activities," and that "[t]his knowledge crept into the selection process."[49]  However, she offers no evidence to support either that the second panel members had knowledge of her involvement in prior EEO activity, or that the selection process was affected by any knowledge they made have had.  Absent any evidence that there was a discriminatory or retaliatory effect on the selection process, any knowledge the panel members may have had of plaintiffs' prior EEO activity is immaterial and cannot establish pretext.

### e.  Intentional miscalculations of plaintiff's scores

Plaintiff also asserts that "again there were intentional miscalculations and

---

[48]Plaintiff offers cites to the record (*see* plaintiff's brief, at 23), but none of the cited material actually contains information to support plaintiff's assertions.

[49]Plaintiff's brief, at 23.

erroneous scoring by panel members designed to sway the process and down rate the Plaintiff to prevent her selection for the position."[50]  Specifically, plaintiff states that, after Shifflett and Fuller reconstructed their scores at the request of the EEO officer, they discovered that the scores for plaintiff and Rodriguez should have been tied. That statement is factually accurate, but of no consequence to the pretext analysis. Shifflett testified that, even if plaintiff's score had been tied with Rodriguez's score, Rodriguez still would have been a better candidate for the position due to her attitude, her on-the-job experience, and her business experience.  There is nothing in the record to cause this court to question Shifflett's business judgment on that matter. Plaintiff also states that, in her own recalculation of the panel's scores, she should have received *five* points higher than Rodriguez.[51]  Plaintiff offers the results of her recalculation, but she does not explain how she reached those results, and she does not have any other proof that her score should have been five points higher than Rodrigeuz's.  Plaintiff's disagreement with the panel's method of calculating scores is insufficient to establish pretext, in the absence of any other evidence of discrimination or retaliation.

### f.      Plaintiff's superior qualifications

---

[50]*Id.*

[51]*Id.* at 24. ("A review of the scoring based on the application of discrete, objective selection criteria reveals that the Plaintiff's overall score was 5 points higher than Rodriguez's score.").

Finally, plaintiff asserts that she was the more qualified candidate for the GS-14 position. The second panel members acknowledged that plaintiff was a good candidate, that she gave an excellent interview, and that the decision between her and Rodriguez was close. Furthermore, plaintiff points out that she had been a GS-14 for six years at the time of the selection, while Rodriguez was only a GS-13, and had only been at that level for three years.[52] This evidence, however, is not sufficient to demonstrate that no reasonable decisionmaker would have selected Rodriguez over plaintiff. The second panel members were entitled to consider Rodriguez's years of business experience to be more important than plaintiff's higher number of years of acquisition experience, and even more important than plaintiff's higher years of overall experience. Additionally, other than plaintiff's conclusory, unsupported challenge to the scoring process, there is no evidence to indicate that the second panel did anything other than apply the scoring matrix and recommend the top-scoring candidate for hire. Even if plaintiff's and Rodriguez's scores had been recalculated to be a tie, the second panel members articulated legitimate business reasons for preferring plaintiff over Rodriguez, and those reasons should not be questioned by this court.

In summary, plaintiff has failed to establish that defendant's proffered

---

[52]*See* defendant's evidentiary submission, at Exhibit 14 (plaintiff's resume) & Exhibit 15 (Rodriguez's resume).

legitimate, non-discriminatory reasons for not selecting her for the GS-14 position were actually mere pretext for race discrimination and retaliation.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, this court concludes that plaintiff has failed to establish that defendant's proffered legitimate reasons for not selecting her for both the GS-15 position and the GS-14 position actually were a mere pretext for unlawful race discrimination or retaliation.  Accordingly, defendant's motion for summary judgment in his favor is GRANTED, and all of plaintiff's claims are DISMISSED with prejudice.  Costs incurred herein are taxed to plaintiff.  The Clerk of Court is directed to close this file.

DONE this 11th day of February, 2011.

_____
United States District Judge

28